IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID A. GOMOLKA, )
)
      Plaintiff, )
)
v. ) Case No. 04 C 5623
)
QUOTESMITH.COM )
)
      Defendant. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

David Gomolka has sued his former employer, Quotesmith.com, for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621. Quotesmith has moved for summary judgment. For the reasons stated below, the Court grants Quotesmith's motion.

### Facts

Gomolka, who was born on July 29, 1952, claims that Quotesmith fired him because of his age in violation of the ADEA. Quotesmith contends that it did not fire Gomolka because of his age, but because he failed to follow his supervisors' instructions.

Quotesmith is an Internet-based insurance company that enables customers and business owners to obtain instant quotes from over 300 insurance companies without involving commissioned salespeople. Gomolka began working for Quotesmith on October 5, 1998 as a customer service representative (CSR). In 1999, he was promoted to Policy Delivery Team Leader, a position involving collection of insurance policies sent to Quotesmith from outside insurance companies and delivered them to the CSRs he supervised. The CSRs then processed

1

the insurance policies for delivery and mailed them to insureds. In April or May 2001, Quotesmith promoted Gomolka again, this time to the position of Director of New Accounts. In that role, Gomolka supervised four team leaders who oversaw various aspects of insurance policy processing.

In 2000, Quotesmith had a net operating loss of over eighteen million dollars and began making changes. It outsourced much of its application processing paperwork to outside agencies and reorganized the way CSRs processed policies. As a result of these changes, Quotesmith laid off twenty-five employees – twenty-one were over forty years-old. Quotesmith also eliminated Gomolka's Director of New Accounts position and made him CSR Team Leader. In that role, he reported directly to Burke Christensen, Vice President of Operations, and indirectly to William Thoms, Executive Vice President, and Robert Blands, the company's CEO. Gomolka's new job required him to train the remaining CSRs on how to perform the duties of the terminated CSRs and to create binders collecting information processed by the outside agencies. Thoms, in particular, was concerned about Quotesmith's ability to process information from the outside agencies because the company was using new (and possibly unreliable) technology to obtain it.

Quotesmith claims that Thoms and Bland became progressively dissatisfied with Gomolka's performance as CRS Team Leader. On June 20, 2001, Thoms placed a letter in Gomolka's personnel file noting that he had carelessly prepared the binders. On September 19, Bland asked Gomolka to revise the computer screen used by CSRs, and Gomolka did not follow up on the request to Bland's satisfaction. On September 27, Gomolka attended a meeting with Thoms and Bland and admitted that he had not instituted a CSR training schedule as Thoms and Christensen had previously instructed. Thoms terminated Gomolka later that day.

Gomolka offers what he characterizes as evidence of Quotesmith's habitual discrimination against older employees. He presents the deposition of William Hemsworth, Quotesmith's former vice president of marketing, who was terminated a few months after Gomolka. Hemsworth claims that some time in 2001, he attended an executive meeting with Bland and Thoms and heard them discuss their dissatisfaction with a certain unnamed employee. Hemsworth Dep. at 62. In the course of the meeting, Hemsworth claims that Bland commented "on how old [the employee] was and that he was older than average." *Id.* at 63. Director of Human Resources, Rick Pipal, then said something to the effect of, "No, we can't talk about his age." *Id.* at 64. This left Hemsworth with the impression that "age was on Bland's mind." *Id.* Gomolka also presents the fact that twenty-one of the twenty-five employees Quotesmith laid off in 2001 were over the age of forty and that Quotesmith gave a severance package to a twenty-six year-old employee who was terminated for cause but did not give such a package to Gomolka.

**Discussion**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In this case, the Court must view the facts in favor of Gomolka and draw all reasonable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The ADEA provides that it is unlawful for an employer to discharge any individual because of his age. 29 U.S.C. § 623(a)(1). Gomolka has brought his age discrimination claim under a disparate treatment theory. Under this theory, he must prove that his age played a role in Quotesmith's decision making process and had a "determinative influence on the outcome."

3

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000). In other words, Gomolka must show that "but for" age discrimination, he would not have been fired. *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 396 (7th Cir. 1997).

1. **Direct method of proof**

Gomolka can defeat Quotesmith's summary judgment motion by submitting evidence from which a jury reasonably could find that he was terminated because of age, either by the direct method of proof or by the indirect, *McDonnell Douglas* burden-shifting method. *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002). "The direct method of proof permits a plaintiff to show, by way of direct or circumstantial evidence," that his termination was motivated by an illegal purpose. *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Gomolka asserts that he has presented direct evidence in the form of the deposition testimony of William Hemsworth, who testified that when discussing his dissatisfaction with an employee, Bland remarked that the employee was "older than average." This remark is not direct evidence of age discrimination. Comments by superiors regarding older workers do not qualify as direct evidence of age discrimination unless they relate to the employment decision in question. *See Eiland v. Trinity Hosp.*, 150 F.3d 747, 751 (7th Cir. 1998); *Huff v. UARCO, Inc.*, 122 F.3d 374, 384-85 (7th Cir. 1997).

To proceed under the direct method of proof without direct evidence, Gomolka must present circumstantial evidence of age discrimination. To avoid summary judgment using circumstantial evidence, Gomolka must construct a "convincing mosaic" that "allows a jury to infer intentional discrimination by the decision maker." *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). In *Troupe*, the Seventh Circuit identified three categories of

circumstantial evidence: (1) suspicious timing, ambiguous statements, behavior or comments directed at other employees, and other "bits and pieces" of evidence from which an inference of discrimination can be drawn; (2) evidence suggesting that similarly situated, younger employees received better treatment; and (3) evidence that the stated reason for termination was a "mere pretext for discrimination." *Id.*; *see also Volovsek v. Wisc. Dept. of Agr., Trade, and Consumer Prot.*, 344 F.3d 680, 689-90 (7th Cir. 2003).

Gomolka contends that statistical evidence provides circumstantial proof that Quotesmith discriminated against him because of his age. He provides documentation indicating that twenty-one out of twenty-five employees laid off in 2001 were over the age of forty. Statistics that demonstrate disparate impact, however, are rarely enough to show a violation under the ADEA. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). To be probative circumstantial evidence of individual disparate treatment, statistics must demonstrate that similarly situated individuals outside the protected class were treated more favorably. "[T]he statistics must look at the same part of the company where the plaintiff worked; include only other employees who were similarly situated with respect to performance, qualifications, and conduct; the plaintiff and the other similarly situated employees must have shared a common supervisor; and treatment of the other employees must have occurred during the same [reduction in force] as when the plaintiff was discharged." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Gomolka has not offered any evidence that the twenty-one individuals laid off were similarly situated with regard to qualifications or the supervisor to whom they reported. As a result, no jury reasonably could find that Gomolka's statistics are evidence of age discrimination.

5

Gomolka's last piece of purported circumstantial evidence is the termination of Caius Vicas, a former employee in the information services department who was terminated for cause around the same time as Gomolka. Gomolka insists that Vicas' termination is circumstantial evidence of age discrimination because Vicas received a severance package, though Gomolka did not. This evidence suffers from the same shortcoming as Gomolka's statistical evidence: a failure to demonstrate that Vicas was similarly situated. Indeed, Gomolka concedes that Vicas was fired by a different decision maker and was given a severance package only to protect Quotesmith from network sabotage. Pl.'s Resp. to Def.'s LR 56.1 Stmt. ¶ 160-65. Consequently, Quotesmith's treatment of Vicas is not circumstantial evidence of age discrimination.

## 2.  Indirect proof

Under the indirect, *McDonnell Douglas* burden-shifting method, Gomolka must first establish a *prima facie* case of age discrimination. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (applying *McDonnell Douglas* to claims brought under the ADEA). In the summary judgment context, Gomolka must provide evidence from which a jury reasonably could find that he is at least forty years old, was performing up to Quotesmith's legitimate expectations, suffered an adverse employment action, and similarly situated employees under the age of forty were treated more favorably. *See, e.g., Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 571-71 (7th Cir. 1998). If Gomolka establishes a *prima facie* case, then the burden shifts to Quotesmith to articulate a legitimate, nondiscriminatory reason for terminating him. *McDonnell Douglas*, 411 U.S. at 802. If Quotesmith satisfies its burden, Gomolka must show that Quotesmith's proffered reason was a pretext for age discrimination. *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 574 (7th Cir. 2003).

The parties dispute whether Gomolka can establish a *prima facie* case. But assuming he could do so, Quotesmith has met its burden to proffer a non-discriminatory reason for Gomolka's termination: poor performance. Def. Ex. 32 (termination/exit interview form indicating a failure to follow directions of COO). This would shift the burden back to Gomolka to provide evidence from which a jury reasonably could find that Quotesmith's reason was pretextual. Because, as we discuss below, Gomolka cannot meet that burden, the Court need not address whether he can establish a *prima facie* case. *See, e.g., Fairchild*, 147 F.3d at 572.

Gomolka offers substantially the same evidence to show pretext as he did to show intentional discrimination under the direct method of proof. As the Court has already discussed, however, the statistical evidence and the evidence concerning another terminated employee receiving a severance package do not call into question the honesty of Quotesmith's stated reason for terminating Gomolka. *See, e.g., Flores v. Preferred Technical Group*, 182 F.3d 512, 516 (7th Cir. 1999) (the question is "not whether the employer's reasons for a decision are 'right' but whether the employer's description of its reasons is honest").

Gomolka also offers the deposition testimony of his former supervisor, Burke Christensen, who testified that he had no specific criticisms of Gomolka's job performance and that Gomolka was responsive to all of Christensen's requests. This testimony does not create a genuine issue of pretext. A supervisor's sworn statement attesting to a plaintiff's adequate job performance is insufficient to demonstrate that an employer's proferred reason is dishonest, especially where, as in this case, the statement is unsupported by specific facts. *See Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir. 1994); *Williams v. Williams Elecs., Inc.*, 856 F.2d 920, 924 (7th Cir. 1988).

Gomolka also reasserts Bland's alleged discriminatory comments as indirect evidence of discrimination. Though evidence of discriminatory remarks unrelated to the employment decision in question may, in some instances, be used to overcome an employer's summary judgment motion, such remarks standing alone – as they are here – are insufficient to permit a reasonable jury to find an employer's proffered reason for termination pretextual. *See Huff*, 122 F.3d at 385.

In sum, Gomolka has failed to provide evidence from which a reasonable jury could find that Baxter's reason for terminating him was pretextual.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment [docket no. 21]. The Clerk is directed to enter judgment in favor of the defendant. The trial date of January 9, 2006 is vacated.

                                         _____
                                         MATTHEW F. KENNELLY
                                         United States District Court

Date: October 7, 2005